Hayward J. Walters was indicted for the sale of cocaine, in violation of § 13A-12-211, Code of Alabama 1975, and for possession of cocaine, in violation of § 13A-12-212, Code of Alabama 1975. He was found guilty of possession of cocaine and was *Page 208 
sentenced to three years in prison. He raises four issues on appeal.
 I
The appellant contends that the trial court erred in denying his motion for judgment of acquittal because 1) he says the evidence offered against him was improperly admitted because it was seized pursuant to an unlawful arrest, and 2) he says the evidence was insufficient to sustain the conviction. These arguments will be considered separately below.
 A
The appellant contends that the police did not have probable cause to arrest him and search his car. We note that the record does not contain a transcript of a hearing on the appellant's motion to suppress, and does not contain a discussion of his motion for judgment of acquittal at the close of the State's evidence.
The record reveals that Andalusia Narcotics Officer Jerry Parker, of the Andalusia Police Department, became involved with this case several months before the appellant's vehicle was stopped. He testified that he was in his office with Investigators Wade Garrett and Rusty Beck on July 19, 1989, when a confidential informant came in. He and the informant stepped outside. The confidential informant told him he had seen the appellant on North Cotton Street selling crack cocaine. Parker testified that he received other information that corroborated this information. He and Rusty Beck then left in one vehicle and Wade Garrett left in another vehicle, to see if they could find "this white Camaro." (R. 20). (The appellant was said to be driving a white Chevrolet Camaro automobile). He and Beck saw the Camaro pulling up to a stop sign on North Cotton Street. A black male got into the vehicle. Parker told Garrett over the radio to do a vehicle stop.
Investigator Garrett testified that the officers left Parker's office with a description of the appellant's vehicle and its tag number. After leaving the office, he saw the white Camaro going south on North Cotton Street. He checked the Camaro's tag number to make sure it was the car they were looking for. He then pulled up beside the car. The car stopped at a stop sign and David Crittenden got into the passenger's side of the Camaro. Shortly thereafter, Garrett pulled up beside the Camaro with his blue light and motioned the driver to pull over. He then saw the appellant reach down to his right and hand something to David Crittenden. Garrett further testified, "David Crittenden took it in his hand, came up to his mouth and at that time I saw that it was a plastic bag. David then took the plastic bag, stuck it in his mouth, the corner of it, and tore the corner off with his teeth and swallowed the corner of the bag. Then he threw the bag down and tried to light a cigarette." (R. 40).
After getting out of the car, the appellant and David Crittenden were arrested, without a warrant, and were patted down. The officers then conducted a search of the vehicle. The appellant contends that the evidence seized during this search was inadmissible because it was seized as a result of what he says was an illegal arrest. The police officers seized a sunglasses case which contained a razor blade. Forensic tests later performed on the razor blade revealed that it displayed a small amount of residue which contained cocaine. A cellophane bag with one corner torn out was also found in the car. There was a white-colored residue in the bag; however, the quantity was not sufficient for an analysis. A change purse recovered from the car contained three Mylan 130 pills. These tablets were later described as a combination of dextropropoxyhene, which is a controlled substance, and acetaminophen. This combination of drugs is also sold as Darvocet. Parker testified that $555.00 was taken from appellant's person. A test performed on the money by the Troy Police Department Canine Unit revealed that it was tainted with drugs. The money was not offered or admitted into evidence.
Although no issue regarding this has been raised on appeal, we note that the initial stop of the appellant's vehicle was justified as an investigative stop under Terry *Page 209 v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A police officer is not required to have probable cause in order to make a Terry-type stop. Molina v. State, 533 So.2d 701
(Ala.Crim.App. 1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547,103 L.Ed.2d 851 (1989). Based on the totality of the circumstances, the police officers had a particularized and objective basis for stopping the appellant. Molina.
"[A] warrantless arrest is justifiable, and will be valid if the officer had reasonable or probable cause to effect the arrest at the time that it was made." Foy v. State,387 So.2d 321, 324 (Ala.Crim.App. 1980).
 "In determining whether there was probable cause to arrest, it is not necessary that the officer have before him evidence which would support a conviction for the offense. He must have facts and circumstances within his knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the suspect had committed or was committing an offense."
Foy at 324 (quoting Braxton v. State, 350 So.2d 753, 756
(Ala.Crim.App. 1977). "Probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life." Musgrove v. State, 519 So.2d 565
(Ala.Crim.App.), aff'd, 519 So.2d 586 (Ala. 1986), cert.denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988). "Although the initial stop of the suspect may have been justified only by reasonable suspicion, additional facts gathered from the stop may strengthen that suspicion into probable cause." Molina at 707 (quoting United States v.Martinez, 808 F.2d 1050, 1055 (5th Cir.), cert. denied,481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987). Furtive gestures may be taken into account in determining whether probable cause exists. Molina; Lewis v. State, 518 So.2d 214
(Ala.Crim.App. 1987).
 "If the police see a person in possession of a highly suspicious object or some object which is not identifiable but which, because of other circumstances, is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present."
W LaFave, 2 Search and Seizure § 3.6(d) at 58 (2d ed. 1987).
The police officers' suspicion ripened into probable cause when Investigator Garrett observed the furtive gestures and evasive actions of the appellant and David Crittenden immediately after he motioned them to stop. These actions further corroborated the information provided by the confidential informant, and the totality of the information known to the officers established probable cause for the arrest. See, e.g., United States v. Sanders, 631 F.2d 1309 (8th Cir. 1980). The search of the appellant's car was proper because it was an incident to a lawful arrest. Molina. The search of the appellant was also proper. Nodd v. State,549 So.2d 139 (Ala.Crim.App. 1989).
 B
The appellant also contends that the evidence was insufficient to sustain the conviction. We have already set out some of the relevant portion of the State's evidence above. David Crittenden also testified for the State that at approximately 6:45 p.m. the appellant asked him if he needed a ride. He got into the car with the appellant. After the police pulled up, the appellant handed him a cellophane bag and told him to eat it. He testified that he did not know what was in the bag and that he ate the contents because he panicked. After the State rested, the appellant's fiancée testified that she had been driving the Camaro all week and that appellant took the Camaro between 3:00 p.m. and 4:00 p.m. on the day of his arrest. She testified that the Mylan 130 pills belonged to her. She said she acquired them with a prescription for an ear infection. She further testified that there were no plastic sandwich bags in the car when the appellant picked up the car from her, and that there was no sunglasses case in the car.
The evidence was sufficient to sustain the appellant's conviction. It is well settled *Page 210 
that conflicting evidence presents a question for the jury.Knight v. State, 548 So.2d 647 (Ala.Crim.App. 1989); Congo v.State, 477 So.2d 511 (Ala.Crim.App. 1985). We will not set aside a conviction on the basis of insufficiency unless "allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust." Johnson v. State, 378 So.2d 1164, 1169
(Ala.Crim.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979). See also Exparte Cunningham, 548 So.2d 1049 (Ala. 1989); Ogle v. State,548 So.2d 499 (Ala.Crim.App. 1988).
 II
The appellant contends that the trial court erred in admitting exhibits 2, 3, and 5 into evidence because, he says, the State failed to prove a proper chain of custody. These exhibits included the razor blade with the cocaine residue, the cellophane bag, and the Mylan 130 pills. The appellant contends that there was a substantial break in the chain of custody because Investigator Garrett delivered the evidence to Mark Crews, a drug chemist with the Alabama Department of Forensic Sciences, and Mark Crews did not testify. David Thorne, the criminalist who performed the tests on the evidence, testified on cross-examination that the evidence was received by Crews and was retained by him until he turned it over to Thorne. On redirect examination, Thorne testified that he received the evidence in sealed envelopes and that there was no evidence that they had been opened and resealed. The appellant argues that there was no evidence that Crews did not tamper with the evidence.
 "The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. Williams v. State, 375 So.2d 1257
(Ala.Crim.App.), cert. denied, 375 So.2d 1271
(Ala. 1979); Tate v. State, 435 So.2d 190
(Ala.Crim.App. 1983). 'The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.' Slaughter v. State, 411 So.2d 819, 822 (Ala.Crim.App. 1981) (emphasis supplied)."
Ex parte Williams, 505 So.2d 1254, 1255 (Ala. 1987) (quoting this court in Williams, 505 So.2d at 1253). "A weak link in the chain of custody presents a question of credibility and weight for the jury rather than a question of admissibility." Holtonv. State [Ms. 89-1114, November 30, 1990], ___ So.2d ___ (Ala.Crim.App. 1990). The record reveals that there was a reasonable probability that the items tested were the same as, and not substantially different from, the items at the beginning of the chain.
 III
The appellant contends that the trial court erred in refusing to give his written requested jury charges numbered one through 29. The appellant failed to preserve this issue as to his written charges one through 15 and 20 through 29, because he did not state the grounds of his objection with sufficient specificity, stating only that they were true and correct statements of law. Corbin v. State, 551 So.2d 429
(Ala.Crim.App. 1989); Connolly v. State, 539 So.2d 436 (Ala.Crim.App. 1988). The appellant's written, requested charge 16 was properly refused because it was substantially covered by the court's instructions concerning the credibility of witnesses and conflicting testimony. Harris v. State, 539 So.2d 1117
(Ala.Crim.App. 1988). Furthermore, charge 16 dealt with a witness testifying under a promise of immunity or hope of reward. There was no evidence whatsoever that David Crittenden or any other witness was promised any immunity or reward for testifying. Thus, the requested charge was abstract and was properly refused. White v. State, 410 So.2d 135
(Ala.Crim.App. 1981). The appellant's requested charge 17 was properly refused because it was argumentative and did not state a correct principle of law. *Page 211 Hill v. State, 210 Ala. 221, 97 So. 639 (1923).
The appellant's requested charges 18 and 19 concerned the corroboration requirement for accomplice testimony. These charges were also properly refused. Assuming that David Crittenden was an accomplice, whether his testimony was properly corroborated was a question of law for the trial court. Colvette v. State, 568 So.2d 319 (Ala.Crim.App. 1990);Caldwell v. State, 418 So.2d 168 (Ala.Crim.App. 1981). The probative force and sufficiency of such evidence, along with the accomplice testimony, is for the jury's determination.Colvette; Caldwell. Furthermore, we note that it is clear from the record that Crittenden's testimony was more than sufficiently corroborated.
 IV
The appellant next contends that the trial court erred in refusing to allow him to impeach Officer Wade Garrett with allegedly prior inconsistent statements supposed to be made by him and reported in the Andalusia Star News. A review of the record reveals that Garrett, who wrote press releases for theStar News, denied writing the particular newspaper articles cited by the appellant. The appellant then attempted to question Garrett about the articles. The State's objection to the questioning was sustained. The trial court then properly reminded the appellant that he could ask Garrett if he made the statements if the appellant was able to later prove that Garrett made the statements. The appellant then began cross-examining Garrett on a different matter.
After a witness on cross-examination denies making an inconsistent out-of-court statement, "the only available move for the impeaching party is to bring on an impeaching witness who can testify as to the prior inconsistent statement of the witness being impeached." C. Gamble, McElroy's Alabama Evidence
§ 157.01(1) (3d ed. 1977). "If the witness denies making a statement, material or immaterial, which relates to the credibility of the witness in the particular case, or testifies that he does not remember making it, other witnesses who heard the statement may be called as rebuttal evidence." W. Schroeder, J. Hoffman and R. Thigpen, Alabama Evidence § 6.8 (1987).
The appellant showed Garrett two newspaper articles. Garrett denied writing the articles. The appellant then had the opportunity to prove, through another witness, that the articles were written by Garrett. The appellant could have also asked Garrett if he made statements in the articles which were shown to him. Upon his denial that he made any statements, the appellant had the opportunity to prove, through another witness, that the appellant made certain statements. The appellant did not follow either course of action. Obviously, the appellant was not in a position to prove the alleged inconsistent statements. Furthermore, the record does not reveal how the alleged statements were inconsistent with Garrett's testimony. We can consider the case only as it is presented in the record. See Sparks v. State, 450 So.2d 188
(Ala.Crim.App. 1984). The duty is on the appellant to present the points he intends to raise, on the record, with reasonable certainty. Sparks. The appellant could have done this by presenting his argument out of the presence of the jury. We will not reverse a conviction by presuming a fact not shown by the record and making it a ground for reversal. Sparks;Williams v. State, 412 So.2d 1274 (Ala.Crim.App. 1982).
For the reasons set forth above, this case is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur. *Page 212